Dear Mr. Coates:
On behalf of the Town of Berlin, you have requested our opinion on an issue concerning municipal annexation under Article 23A, § 19 of the Maryland Code. Under § 19(a)(1), a municipal corporation may enlarge its boundaries by annexing land "[w]hich is contiguous and adjoining to the existing corporate area."
Our opinion is as follows: Because Maryland courts have never interpreted the requirement that annexed land be "contiguous and adjoining," and because the case law in other states interpreting similar requirements is sharply divided, we cannot offer a definitive answer to your question. Nevertheless, in our view, the legislative purpose underlying § 19(a)(1) would be undermined if the requirement were construed to allow annexation of distant tracts of land, connected to the municipality only by the artifice of roadway annexation and lacking any common features with the municipality. In other words, the mere touching of boundaries resulting from a highway annexation does not, in our opinion, satisfy the statutory requirement. Instead, a municipality considering a "strip" annexation should undertake a fuller analysis of the relationship between the municipality and the real object of the annexation — the land at the other end of the strip of highway. If annexation would result in a unified sense of community identity between the municipality and the annexed land, the annexation would likely be approved by the courts. If, however, the land and the municipality lack commonality, the annexation would likely be disapproved.
 I Background
As we understand the facts, the town of Berlin has received an annexation petition from the owner of a 95 acre tract of land located approximately two and one-half miles east of Berlin's current boundaries. The petition seeks annexation of that tract of land, plus a strip along two highways sufficient to connect the current eastern boundary of the town with the tract of land. As you describe it in your letter:
 [T]he petition proposal is to annex Maryland Route 346, a two-lane highway, which adjoins the town of Berlin and annex U.S. Route 50 until it adjoins the property in question. Maryland Route 346 runs easterly from the Berlin town limits approximately one mile to U.S. Route 50 where it merges with U.S. Route 50. From U.S. Route 50 easterly where it merges with Maryland Route 346, it is approximately one and one half miles to the property in question. Both U.S. Route 50 and Maryland Route 346 are owned and maintained by the State of Maryland. There are numerous businesses and residences along the entire stretch of Maryland Route 346 and U.S. Route 50 to the property in question. There is no desire to annex the properties along Maryland 346 or U.S. Route 50 mainly because these properties do not want to be annexed into the town of Berlin at this time.
Annexation of State-owned land is generally permissible. See 76Opinions of the Attorney General 348 (1990). Your question is whether this proposed annexation satisfies the requirement in Article 23A, § 19(a)(1)that newly annexed land be "contiguous and adjoining to the existing corporate area."[1]
 II Legislative History and Purpose
Our approach to this problem is guided by "the cardinal rule in statutory construction" — "to effectuate the Legislature's broad goal or purpose." Armstead v. State, 342 Md. 38, 56,673 A.2d 221 (1996). "The primary source of legislative intent is the language of the statute itself." Id.
Applying the statutory language literally, we would conclude that § 19(a)(1) permits the proposed annexation. The area to be annexed is "contiguous," because the western edge of the annexed portion of Route 346 would be "in contact" with the western edge of Berlin. See Random House Dictionary of the English Language
439 (2d ed. 1987). It would also be "adjoining," because the inclusion of the highway ensures that a small portion of the annexed property would be "located next to" Berlin. Id. at 25. And, indeed, some courts have given a literal interpretation to comparable statutory requirements and have upheld "shoestring" or "strip" annexations of this kind. See, e.g., Safford v. Thatcher,495 P.2d 150 (Ariz.App. 1972); Burlingame v. San Mateo County,203 P.2d 807 (Cal.App. 1949); Fox Development Co. v. San Antonio,468 S.W.2d 338 (Tex. 1971).
A literal construction of statutory text, however, must not sacrifice the legislative objective. "In reading the language, we apply common sense to avoid illogical or unreasonable constructions . . . ." Armstead v. State, 342 Md. at 56. What, then, is the purpose underlying the requirement that annexed land be "contiguous and adjoining"?
The provision was not part of the statute first enacted to implement the Municipal Home Rule Amendment to the Maryland Constitution. See Chapter 423 of the Laws of Maryland 1955.[2] Municipal corporations originally had the following broad authority to annex land: "The legislative body, by whatever name known, of every municipal corporation in this State may enlarge corporate boundaries thereof as in this sub-heading provided."
The requirement now found in § 19(a)(1) was imposed two years later by separate legislation. Chapter 526 of the Laws of Maryland 1957. Although we can find no legislative history for the provision,[3] the General Assembly evidently attached considerable importance to this restriction. Not only was it the subject of a separate bill, but also the bill was amended to add the phrase "and adjoining" to what had been introduced as a requirement that annexed land be "contiguous." As introduced, the bill would have added the following provision: "But this power shall apply only as to land which is contiguous to the existing corporate area." As amended and enacted, the limitation on annexation authority was as follows: "But this power shall apply only as to land which is contiguous and adjoining to the existing corporate area." Presumably, the addition of the word "adjoining" was intended to signify that a mere touching of the existing corporate area and the annexed land would be insufficient.
In our opinion, the amendment to § 19(a) expresses the General Assembly's objective that an annexation be consistent with the concept of a municipal corporation as a unitary entity — as one court put it, "a collective body of inhabitants, gathered together in one mass, with recognized and well-defined external boundaries which gathered the persons inhabiting the area into one body, which is not separated by remote or disconnected areas." Hillmanv. Pocatello, 256 P.2d 1072,1073 (Ida. 1953). See also, e.g., People ex rel South Barrington v.Hoffman Estates, 198 N.E.2d 97 (Ill. 1964); Mt. Pleasant v. Racine,127 N.W.2d 757 (Wis. 1964).
The North Carolina Supreme Court not long ago persuasively described the relationship between the requirement of contiguity and the concept of a municipal corporation as "a body of people collected or gathered together in one mass, not separated into distinct masses, and having a community of interest because [they are] residents of the same place, not different places. So, as to territorial extent, the idea of a city is one of unity, not of plurality, of compactness or contiguity, not separation or segregation." Hawks v. Town of Valdese, 261 S.E.2d 90, 97 (N.C. 1980) (internal quotation marks omitted). See also City of Denverv. Coulehan, 39 P. 425 (Colo. 1894); letter of advice from Assistant Attorney General Richard E. Israel to Mr. William A. Rada, Jr. (January 8, 1987). The North Carolina court continued:
 The element of contiguity helps to preserve the economic and political viability of municipal government. The costly package of services provided by municipal government can be economically maintained only within the compact boundaries fostered by the contiguity requirement. Conversely, the requirement of contiguity discourages prohibitively expensive extension of municipal services to noncontiguous areas where municipal services cannot be economically supplied. Moreover, it goes without saying that, from a political standpoint, a compact, contiguous area is more easily governed than one split into diverse, noncontiguous enclaves. Vicinity engenders a unified sense of community identity which facilitates the formation of the consensus essential to effective government.
Hawks v. Town of Valdese, 261 S.E.2d at 97. These are the policy considerations that presumably animated the General Assembly when it added the requirement that annexed property be "contiguous and adjoining." This language, therefore, should be applied to particular facts in such a way as to further the legislative objective.
 III Application to Particular Cases
In general, the legislative objective that municipal unity and common purpose be maintained after annexation would most evidently be served when the physical connection between the existing municipality and the annexed land is substantial, not merely the terminus of a long corridor that has no relation to the municipality other than to connect a remote tract. See, e.g., BigSioux Township v. Streeter, 272 N.W.2d 924 (S.D. 1978).
This general rule, however, might have its exceptions. That is, under some circumstances the natural development of a municipality might lead toward a tract of land connected only by the strip of a roadway but nevertheless sharing the unitary purposes of the municipality. For example, in City of Prattville v. City of Milbrook,621 So.2d 267 (Ala. 1993), the Alabama Supreme Court upheld a city's annexation of land connected by a one-mile length of railway bed and roadway. The court emphasized the fact that the annexed property was "similar and homogenous" in character to the original municipality,621 So.2d at 272, and that control of the area was "crucial to [the municipality's] future development . . . ." Id.
We are not in a position to judge whether similar points might be made about Berlin and this particular tract of land to its east. If so, the annexation would likely be upheld by the courts. If not, the annexation would likely be found to be a violation of § 19(a)(1).
 IV Conclusion
In summary, it is our opinion that, in general, the contiguity requirement in § 19(a)(1) does not permit annexations of land located at a considerable distance from existing municipal boundaries and connected to those boundaries solely by the narrow strip of a roadway. In a particular case, however, an annexation of this kind might be upheld if the characteristics of the annexed land lend themselves to the maintenance of the municipality's unitary character.
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 Jack Schwartz Chief Counsel Opinions Advice
[1] Article 23A, § 19(a)(2) prohibits annexation of territory that would create unincorporated enclaves within the corporate limits of the municipality. Your question does not implicate this prohibition. Moreover, this opinion should not be taken to be addressing "contiguity" requirements in other contexts, such as redistricting.
[2] The Municipal Home Rule Amendment, Article XI-E of the Constitution, was enacted as Chapter 53 of the Laws of Maryland 1954 and was ratified by the voters on November 2, 1954.
[3] At the behest of the Maryland Municipal League, the Legislative Council recommended a number of amendments to Article 23A for the 1957 Session, but this amendment was not among them.
 *Page 94